**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMY GEARHART, Individually and as Administratrix** : | |
| **of the Estate of EDGAR A. GEARHART, DECEASED** : | |
| 2107 Hill Road, Effort, PA 18330                          : | **DOCKET NO.** |
| : | |
| **v.**                                                                     : | |
| : | **JURY TRIAL DEMANDED** |
| **PENNSYLVANIA DEPARTMENT OF** : | |
| **CORRECTIONS** : | |
| 1000 Follies Road, Dallas, PA 18612                     : | |
| **AND** : | |
| **SUPERINTENDENT, KEVIN RANSOM** : | |
| c/o Pennsylvania Department of Corrections     : | |
| 1000 Follies Road, Dallas, PA 18612                     : | |
| **AND** : | |
| **CORRECTIONS OFFICER, OSMEL MARTINEZ** : | |
| c/o Pennsylvania Department of Corrections     : | |
| 1000 Follies Road, Dallas, PA 18612                     : | |
| **AND** : | |
| **CORRECTIONS OFFICER, ADAM BRALCZYK** : | |
| c/o Pennsylvania Department of Corrections     : | |
| 1000 Follies Road, Dallas, PA 18612                     : | |
| **AND** : | |
| **CAPTAIN, VIRGIL MEYER** : | |
| c/o Pennsylvania Department of Corrections     : | |
| 1000 Follies Road, Dallas, PA 18612                     : | |
| **AND** : | |
| **SERGEANT GORDON** : | |
| c/o Pennsylvania Department of Corrections     : | |
| 1000 Follies Road, Dallas, PA 18612                     : | |
| **AND** : | |
| **JOHN/JANE DOES 1-10** : | |
| c/o Pennsylvania Department of Corrections     : | |
| 1000 Follies Road, Dallas, PA 18612                     : | |
| **AND** : | |
| **DOROTHY ANN HOBBS, L.P.N.** : | |
| c/o Maxim Healthcare Services, Inc.                   : | |
| 2550 Interstate Drive, Suite 202, Harrisburg, PA 17110 : | |
| **AND** : | |
| **MAXIM HEALTHCARE SERVICES, INC.** : | |
| 2550 Interstate Drive, Suite 202, Harrisburg, PA 17110 : | |
| **AND** : | |

**MEDICAL PROVIDERS 1-5**                                :
c/o Maxim Healthcare Services, Inc.                      :
2550 Interstate Drive, Suite 202, Harrisburg, PA 17110   :
     **AND**                     :
**NAFESE PIERCE**                                        :
c/o Pennsylvania Department of Corrections - Camp Hill   :
2500 Lisburn Road, Camp Hill, PA 17011                   :

_____

## COMPLAINT – CIVIL ACTION

Plaintiff, Amy Gearhart, individually and as Administratrix of the Estate of Edgar A. Gearhart, deceased, by and through her attorneys, VSCP LAW, avers the following against Defendants, the Pennsylvania Department of Corrections, Superintendent Kevin Ransom, Corrections Officer Osmel Martinez, Corrections Officer Adam Bralczyk, Captain Virgil Meyer, Sergeant Gordon, John/Jane Does 1-10, Dorothy Ann Hobbs, L.P.N, Maxim Healthcare Services, Inc., Medical Providers 1-5 and Nafese Pierce.

## INTRODUCTION

1.      On January 28, 2021, 24-year-old Edgar A. Gearhart was murdered while an inmate at SCI Dallas as a direct result of the gross negligence, recklessness and deliberate indifference of Defendants.  Edgar A. Gearhart was caused to suffer puncture wounds to his left shoulder, neck, and knee, blistering of his torso, as well as other catastrophic injuries, as a result of being beaten, stabbed, burned, and left to die as Defendants consciously and willfully ignored pleas by fellow inmates to intervene, and thereby recklessly disregarded Edgar A. Gearhart's need for immediate life-saving medical attention.  In doing so, all Defendants violated Edgar A. Gearhart's most basic and fundamental constitutional rights by instigating the beatings and stabbing, ignoring pleas for help, impeding the investigation into his death by lying to investigators, and promulgating and implementing policies, procedures and practices which encouraged and/or allowed this misconduct to occur.  The conduct of Defendants shocks the conscious and demonstrated a

deliberate indifference to the life and well-being of Edgar A. Gearhart who was, at all relevant times, under their custody, care and control.

**PARTIES**

2.     **PLAINTIFF**, **AMY GEARHART**, is the Administratrix of the Estate of Edgar A. Gearhart, deceased, having been duly appointed by the Register of Willis in Luzerne County on November 22, 2021.   **Exhibit A**.   Ms. Gearhart is an adult citizen and resident of the Commonwealth of Pennsylvania residing at 2107 Hill Road, Effort, PA 18330.

3.     Edgar A. Gearhart was born on February 23, 1996, and was murdered on January 28, 2021, at which time he was an adult citizen and resident of the Commonwealth of Pennsylvania residing at the Pennsylvania Department of Corrections facility, SCI Dallas, located at 1000 Follies Road, Dallas, PA 18612, in Jackson Township, Luzerne County.

4.     **DEFENDANT**, **PENNSYLVANIA DEPARTMENT OF CORRECTIONS** ("DOC"), is an agency of the Commonwealth of Pennsylvania which at all material times owned and operated a facility at SCI Dallas where Plaintiff-Decedent Edgar A. Gearhart was incarcerated. At all times relevant hereto, the DOC employed and controlled agents, superintendents, captains, lieutenants, sergeants, ranking officers, correctional officers, medical staff, prison guards, and other workers, personnel, employees, and agents, as identified herein, who were individually and collectively responsible for the custody, care, and control of inmates like Edgar A. Gearhart.  By and through the acts and omissions of these employees and agents, including but not limited to codefendants in this action, the DOC was at all times acting under color of state law and is jointly and severally liable with codefendants for the injuries, pain and suffering, death, and other damages sustained by Edgar A. Gearhart and his surviving mother.

5.     **DEFENDANT, SUPERINTENDENT KEVIN RANSOM** ("Ransom"), was at all relevant times the Superintendent of the DOC facility located at SCI Dallas and responsible for the operation and administration of this state facility, including but not limited to: promulgating, implementing and enforcing the DOC's practices and procedures within SCI Dallas, as well as providing for adequate hiring, training and proper supervision of correctional staff at the SCI Dallas facility, and providing for the safety and welfare of the inmates incarcerated under the DOC's care, custody and control. At all times material hereto, this Defendant acted under color of state law and authority and within the scope of his employment. Defendant Ransom is being sued in his individual capacity.  As alleged more particularly herein, Defendant Ransom is jointly and severally liable with codefendants for the injuries, pain and suffering, death and other damages sustained by Edgar A. Gearhart and his surviving mother.

6.     **DEFENDANT, CORRECTIONS OFFICER OSMEL MARTINEZ** ("CO Martinez"), was at all material times an employee of the DOC acting as a corrections officer in charge of, *inter alia*, internal security, monitoring the whereabouts and conduct of inmates within SCI Dallas during the 2:00 p.m. to 10:00 p.m. shift on January 28, 2021, and conducting himself consistent with the DOC's policies, practices and procedures designed to ensure the safety and welfare of inmates incarcerated under the DOC's care, custody and control. At all times material hereto, he acted under color of state law and within the scope of his employment.  Defendant CO Martinez is being sued in his individual capacity.  As alleged more particularly herein, Defendant CO Martinez is jointly and severally liable with codefendants for the injuries, pain and suffering, death and other damages sustained by Edgar A. Gearhart and his surviving mother.

7.     **DEFENDANT, CORRECTIONS OFFICER ADAM BRALCZYK** ("CO Bralczyk"), was at all material times an employee of the DOC acting as a corrections officer in

charge of, *inter alia*, internal security and monitoring the whereabouts and conduct of inmates within SCI Dallas during the 2:00 p.m. to 10:00 p.m. shift on January 28, 2021, and conducting himself consistent with the DOC's policies, practices, and procedures designed to ensure the safety and welfare of inmates incarcerated under the DOC's care, custody and control. At all times material hereto, he acted under color of state law and within the scope of his/her employment. Defendant CO Bralczyk is being sued in his individual capacity.  As alleged more particularly herein, Defendant CO Bralczyk is jointly and severally liable with codefendants for the injuries, pain and suffering, death and other damages sustained by Edgar A. Gearhart and his surviving mother.

8.     Defendants, CO Martinez and CO Bralczyk, shall hereinafter be collectively referred to as "the Correctional Officer Defendants."

9.     **DEFENDANT, CAPTAIN VIRGIL MEYER** ("Captain Meyer"), was at all material times an employee of the DOC and acting as a ranking and/or supervising correctional officer within SCI Dallas. At all times material hereto, Defendant Captain Meyer was the shift commander for Defendants, CO Martinez and CO Bralczyk, during the 2:00 p.m. to 10:00 p.m. shift on January 28, 2021, at SCI Dallas, and acted under color of state law and within the scope of his employment. As a correctional supervisor and shift commander of Defendants, CO Martinez and CO Bralczyk, on the evening of January 28, 2021, Defendant Captain Meyer was responsible for the administration, adaptation, implementation and enforcement of the DOC's practices and procedures within SCI Dallas, and was further responsible for ensuring proper supervision of correctional staff and oversight of the safety and welfare of the inmates incarcerated under the DOC's custody, care, and control. At all times material hereto, this Defendant acted under color of state law and authority and within the scope of his employment. Defendant Captain Meyer is

5

being sued in his individual capacity. As alleged more particularly herein, Defendant Captain Meyer is jointly and severally liable with codefendants for the injuries, pain and suffering, death and other damages sustained by Edgar A. Gearhart and his surviving mother.

10. **DEFENDANT, SERGEANT GORDON** ("Sergeant Gordon"), was at all material times an employee of the DOC and acting as a supervising correctional officer within SCI Dallas. At all times material hereto, Defendant Sergeant Gordon was a ranking officer superior in the chain of command to Defendants, CO Martinez and CO Bralczyk, during the evening hours of January 28, 2021, at SCI Dallas, and acted under color of state law and within the scope of his employment. As a ranking and/or supervising correctional officer of Defendants, CO Martinez and CO Bralczyk, on the evening of January 28, 2021, Defendant Sergeant Gordon was responsible for the administration, adaptation, implementation, and enforcement of the DOC's practices and procedures within SCI Dallas, and was further responsible for ensuring proper supervision of correctional staff and overseeing the safety and welfare of the inmates incarcerated the DOC's custody, care and control. At all times material hereto, this Defendant acted under color of state law and authority and within the scope of his employment. Defendant Sergeant Gordon is being sued both individually and in his official capacity as an officer, agent and/or employee of the DOC. As alleged more particularly herein, Defendant Sergeant Gordon is jointly and severally liable with codefendants for the injuries, pain and suffering, death and other damages sustained by Edgar A. Gearhart and his surviving mother.

11. **DEFENDANT, DOROTHY ANN HOBBS, L.P.N.** ("Nurse Hobbs"), was at all material times an agent or employee of Defendant, Maxim Healthcare Services, Inc., an agent subject to the control of the DOC, and at all times relevant here to, acting as a registered nurse providing medications to inmates at the G-Block Housing Unit at SCI Dallas during the evening

hours of January 28, 2021. As a registered nurse in charge of administering medications to inmates like Edgar A. Gearhart at the time in question, Defendant Nurse Hobbs was responsible for: ensuring that inmates actually received and took their medications, personally interacting with inmates, checking on the welfare of inmates during her medication administration rounds if they did not personally respond to her, obtaining informed consent from inmate-patients regarding refusal of or noncompliance with medications, summoning medical assistance for inmates with serious and immediate medical needs during medication rounds, and confirming that an inmate's refusal of medications was premised on an actual interaction with education provided to that specific inmate.   At all times material hereto, this Defendant acted under color of state law by virtue of her agency with the DOC.   Defendant Nurse Hobbs is being sued in her individual capacity for purposes of the Section 1983 claims and in her capacity as an agent/employee of Defendant, Maxim Healthcare Services, Inc., for purposes of the state tort (negligence/medical malpractice) claim.   As alleged more particularly herein, Defendant Nurse Hobbs is jointly and severally liable with codefendants for the injuries, pain and suffering, death and other damages sustained by Edgar A. Gearhart and his surviving mother.   Pursuant to Pa.R.C.P. 1042.3, a Certificate of Merit as to this Defendant has been filed separately with the Court.

12.     **DEFENDANTS, JOHN/JANE DOES 1-10**, were at all material times employees of the DOC acting as lieutenants, ranking officers, supervising officers, corrections officers, medical providers, security and emergency response personnel, and/or other prison staff employed by the DOC who were responsible for the custody, care, control, and treatment of inmates incarcerated at SCI Dallas on the evening of January 28, 2021. At all times material John/Jane Does 1-10 acted under color of state law and within the scope of his/her employment. Defendants, John/Jane Does 1-10, shall hereinafter be collectively referred to as "the Doe Defendants." The

identities of the Doe Defendants are currently unknown to undersigned counsel, in the sole possession and control of Defendants or their counsel, are readily identifiable by Defendants and/or their counsel, and/or will be identified and joined in this action within a reasonable time after they are discerned during discovery, if and when appropriate.

13.     **DEFENDANT, MAXIM HEALTHCARE SERVICES, INC.** ("Maxim Healthcare"), is a Maryland corporation with its principal place of business located in Maryland, but which maintains several offices and/or locations in the Commonwealth of Pennsylvania, including 2550 Interstate Drive, Suite 202, Harrisburg, PA 17110.  At all times relevant hereto, Defendant Maxim Healthcare was the contracted agent of the DOC and responsible for performing the following acts on behalf of the DOC: hiring, vetting, retaining, recommending, orienting, and staffing the DOC's medical personnel, such as medications nurses like Defendant Nurse Hobbs, training and supervising these individual employee-agents in providing and overseeing medical treatment, and dispensing or administrating medications to inmates at SCI Dallas consistent with their internal policies and procedures, the DOC's policies and procedures, and the standard of care applicable to correctional institutions. As described more particularly herein, Defendant Maxim Healthcare acted and failed to act in its own right as a healthcare provider or agency, as well as by and through the acts and omissions of its duly authorized agents, ostensible agents, servants and employees as set forth herein, such as Defendant Nurse Hobbs and Defendant Medical Providers 1-5.  Pursuant to Pa.R.C.P. 1042.3, a Certificate of Merit as to this Defendant has been filed separately with the Court.

14.     **DEFENDANTS, MEDICAL PROVIDERS 1-5**, were at all material times individuals or entities who acted as employees and/or agents of the DOC and/or Defendant Maxim Healthcare, who were responsible for the medical care and treatment of inmates at SCI Dallas,

including but not limited to the administration of medication, evaluation of inmates with immediate or serious medical needs, and the provision of emergency medical services at SCI Dallas on the evening of January 28, 2021. At all times material Medical Providers 1-5 acted within the scope of his/her employment and/or agency with the DOC and/or Defendant Maxim Healthcare. The identities of Defendant Medical Providers 1-5 are currently unknown to undersigned counsel, in the sole possession and control of Defendants or their counsel, are readily identifiable by Defendants and/or their counsel, and/or will be identified and joined in this action within a reasonable time after they are discerned during discovery, if and when appropriate.

15.     Defendants, Nurse Hobbs, Maxim Healthcare and Medical Providers 1-5, shall hereinafter be collectively referred to as "the Medical Defendants."

16.     **DEFENDANT, NAFESE PIERCE** ("Pierce"), was at all material times an inmate at SCI Dallas residing in that facility located at 1000 Follies Road, Dallas, PA 18612, in Jackson Township, Luzerne County. At all times relevant hereto, Pierce conspired with the Correctional Officer Defendants, to facilitate and carry out the murder of Edgar A. Gearhart, and as described in greater detail below, acted in furtherance of the conspiracy to physically and constitutionally harm Edgar A. Gearhart. Therefore, Defendant Pierce was acting under color of state law on January 28, 2021.

17.     Defendants, CO Martinez, CO Bralczyk, the Doe Defendants, and Nafese Pierce shall hereinafter be collectively referred to as "the Conspiring Defendants."

## JURISDICTION AND VENUE

18.     The court has federal question jurisdiction over the Federal Law Claims pursuant to 28 U.S.C. §§1331 and 1343, as well as the Americans with Disabilities Act, 42 U.S.C. §12132, *et seq*.

19.     This court also has jurisdiction over the State Law Tort Claims, pursuant to the principles of pendant and ancillary jurisdiction.

20.     Venue is proper under 28 U.S.C. §1391(b), because the cause of action upon which the complaint is based arose in Luzerne County, Pennsylvania, which is in the Middle District of Pennsylvania.

## OPERATIVE FACTS

21.     Edgar A. Gearhart was at all times material hereto an inmate incarcerated at SCI Dallas, and specifically in cell #66 of the G-Block housing unit.

22.     At all relevant times, Defendant Pierce was an inmate incarcerated under the DOC's care, custody and control, had an extensive history of violence before his incarceration, and exhibited a propensity for violence throughout his incarceration actually known to Defendants, DOC, Superintendent Ransom, CO Martinez, CO Bralczyk, Captain Meyer, Sergeant Gordon and the Doe Defendants ("the Correctional Defendants").

23.     Despite his extensively violent history and known propensity for violence, Defendant Pierce was placed in charge of the prison phones by Defendant CO Martinez, and the other Correctional Defendants, and was permitted to hold that position by the Correctional Defendants.

24.     For example, Defendant Pierce was responsible for signing up inmates to use the prison phones and managing the slotted times for prison phone use by inmates like Edgar A. Gearhart.

25.     On January 28, 2021, Defendants, CO Martinez and CO Bralczyk, worked the 2:00 p.m. to 10:00 p.m. shift on the G-block housing unit at SCI Dallas.

26.     On information and belief, as the commander and/or ranking officers for the 2:00 p.m. to 10:00 p.m. shift of Defendants, CO Martinez and CO Bralczyk, Defendants, Captain Meyer and Sergeant Gordon, actually were, or should have been, aware of Defendant Pierce's role as an inmate improvidently charged with responsibility over the use of prison phones by other inmates, such as Edgar A. Gearhart.

27.     On January 28, 2021, at or about 7:14 p.m., Defendant Pierce and Edgar A. Gearhart had a disagreement about use of the prison phones located on the first tier of the G-block housing unit.  At that time, Defendant CO Martinez was sitting on a desk outside of the first-tier bubble by the phones, and Defendant CO Bralczyk was inside the bubble.

28.     In response to observing the disagreement between Defendant Pierce and Edgar A. Gearhart, Defendant CO Martinez instigated and elevated the intensity of this altercation by stating, "are you gonna let him talk to you like that?"

29.     On information and belief, Defendant CO Bralczyk was still sitting in the first-tier bubble within earshot of the exchange between Edgar A. Gearhart, Defendant CO Martinez and Defendant Pierce, but did nothing to deescalate the situation.

30.     On January 28, 2021, as a result of Defendant CO Martinez's statement, the disagreement between Defendant Pierce and Edgar A. Gearhart continued as they walked upstairs toward Edgar A. Gearhart's cell (#66) in the second tier of G-Block.

31.     Defendants, CO Martinez and CO Bralczyk, failed to take any steps to deescalate this initial altercation between Defendant Pierce and Edgar A. Gearhart on the stairs, which on information and belief, is situated less than ten (10) feet from the bubble.  The altercation was instead broken up by another inmate.

32.     Immediately after the initial altercation between Defendant Pierce and Edgar A. Gearhart, Pierce descended the stairs with fellow inmate, Daryl Brady, and Defendant Pierce approached Defendant CO Martinez to inform him that they wanted and intended to fight Edgar A. Gearhart.

33.     Instead of reprimanding Defendant Pierce for expressing his intent to fight and physically harm Edgar A. Gearhart, Defendant CO Martinez approved that plan by instructing Defendant Pierce, and co-inmate Brady, that they needed to take their fight "up to the cell" on the second tier of G-Block.

34.     On information and belief, after instructing Defendant Pierce to take the fight upstairs, Defendant CO Martinez unlocked Edgar A. Gearhart's cell to ensure Defendant Pierce's access to allow him to start the fight.

35.     On information and belief, Defendant CO Bralczyk was sitting in the first-tier bubble within earshot of Defendant CO Martinez's directive to Defendant Pierce and co-inmate Brady to take the fight upstairs.

36.     On information and belief, Defendant CO Martinez purposely instructed Defendant Pierce and co-inmate Brady to fight Edgar A. Gearhart on the second tier, as opposed to the lower tier of G-Block, because this area was out of plain view of other correctional officers, inmates and/or surveillance at SCI Dallas.

37.     On January 28, 2021, Defendant Pierce, at the direction and with the permission of Defendant CO Martinez, proceeded to the second tier of the prison block, entered the cell of Edgar A. Gearhart, and initiated a physical confrontation.

38.     By provoking the initial verbal and physical confrontation, approving Defendant Pierce's plan to fight Edgar A. Gearhart on the second tier, Defendant CO Martinez consciously

disregarded the known risk to Edgar A. Gearhart, incited Defendant Pierce's subsequent assault of Edgar A. Gearhart, and purposely failed to stop or prevent this first attack, leaving Edgar A. Gearhart to fend for himself.

39.     Defendant Pierce's initial beating of Edgar A. Gearhart was stopped or impeded by fellow inmates on the second tier of G-Block.

40.     After Defendant Pierce's first assault of Edgar A. Gearhart in cell #66, Edgar A. Gearhart emerged from his cell with a bloody lip from this physical altercation.

41.     Defendant CO Martinez was aware of this first physical assault, but did nothing in response by egging Defendant Pierce on by the prison phones, and then by inciting the first attack by Defendant Pierce with co-inmate Brady.

42.     On information and belief, Defendant CO Bralczyk was also aware of the physical assault but did nothing in deliberate indifference to Edgar A. Gearhart's health, safety and wellbeing.

43.     Following the first physical assault in cell #66, Defendant Pierce was provided a prison-made knife ("shank") outside of Edgar A. Gearhart's cell, then proceeded back toward cell #66 to initiate a second physical altercation with Edgar A. Gearhart immediately outside of his open cell.

44.     During this second altercation, Defendant Pierce raised his right hand, swung the shank in a downward direction, and stabbed Edgar A. Gearhart in the area of his neck and left shoulder.

45.     Defendant Pierce also threw boiling "stinger water" on Edgar A. Gearhart's torso, and stabbed Edgar A. Gearhart in the knee.

46.     Defendant Pierce then left cell #66, and closed the curtain to conceal Edgar A. Gearhart and the bloody floor.

47.     After being stabbed, Edgar A. Gearhart was screaming at Defendant Pierce.

48.     On information and belief, during and after the two (2) physical altercations on the second tier, Defendants, CO Martinez and CO Bralczyk, could hear commotion from the quarrels between Edgar A. Gearhart and Defendant Pierce because when fights take place in the G-block housing unit, it echoes throughout both tiers of the block.

49.     On information and belief, at all relevant times, a corrections officer on the first tier, including Defendant CO Bralczyk in the first-tier bubble could easily take a few steps, look up, and readily observe what was happening on the second tier.

50.     Despite having knowledge of and a reasonable opportunity to eliminate escalation and/or harm to Edgar A. Gearhart, which Defendant CO Martinez himself instigated, the Correctional Officer Defendants sat idly by and did nothing to mitigate the risk of an ongoing confrontation and attack.

51.     After the stabbing, Inmate Michael Diorio went to Edgar A. Gearhart's cell to return Edgar A. Gearhart's iPad which he borrowed.  When he observed Edgar A. Gearhart bleeding out and dying in cell #66, Inmate Diorio walked down to the first-tier bubble, and directly told Defendant CO Martinez that Edgar A. Gearhart needed medical assistance.  In response, Defendant CO Martinez acknowledged what had happened, but deliberately and wantonly disregarded the substantial risk of serious harm to Edgar A. Gearhart, stating: "fuck him [Mr. Gearhart], let him die, let the next shift deal with it."

52.     On information and belief, Defendant CO Bralczyk was still on the first tier of G-Block in the communications bubble and/or in the vicinity of Defendant CO Martinez at the time

inmates informed Defendant CO Martinez of Edgar A. Gearhart's urgent need for medical assistance.

53.     Defendant CO Martinez's failure to obtain, provide, or summon any medical assistance simply because he did not want to deal with the paperwork, time, and labor associated with addressing Edgar A. Gearhart's dire situation truly shocks the conscience.

54.     On January 28, 2021, at or about 8:00 p.m. (roughly 30 minutes after the stabbing of Plaintiff-Decedent Edgar A. Gearhart), Defendant CO Martinez escorted Defendant Nurse Hobbs to perform routine medication rounds before lockdown, including the second tier and Edgar A. Gearhart's cell #66, where he was actively bleeding out and dying.

55.     On information and belief, after Inmate Diorio observed Edgar A. Gearhart dying in his cell but before escorting Defendant Nurse Hobbs to perform medication rounds in the G-Block, Defendant CO Martinez and/or Defendant CO Bralczyk locked the doors to the cells, including Edgar A. Gearhart's cell.

56.     During his incarceration, the DOC medical staff diagnosed Plaintiff-Decedent Edgar A. Gearhart with multiple psychiatric disorders.  Specifically, the SCI Dallas psychiatric clinic diagnosed him with depressive disorder and "attention-deficit/hyperactivity disorder, Combined presentation."

57.     At the time of medication rounds on the evening of January 28, 2021, Defendant Nurse Hobbs was supposed to administer or provide two (2) medications to Edgar A. Gearhart, Duloxetine and Guanfacine, to treat Edgar A. Gearhart's psychiatric disorders.

58.     Approximately two (2) months preceding his death, the DOC's psychiatric clinic at SCI Dallas determined that an increase in Edgar A. Gearhart's medication (Duloxetine), from

once to twice daily, was necessary to treat his depressive disorder.  This prescription included one dose at nighttime before bed/lockdown.

59.     On information and belief, Edgar A. Gearhart was always compliant with his nighttime medications, and since the time his dosage was increased, he never refused compliance with his dosage before lockdown at night.

60.     As Defendant Nurse Hobbs approached and/or passed by Edgar A. Gearhart's cell, she called out his last name for the explicit purpose of summoning him to provide him the medication.  At this time, Defendant CO Martinez was standing behind Defendant Nurse Hobbs, and Defendant Pierce was standing nearby.

61.     Defendant Pierce stated to Defendant Nurse Hobbs (and Defendant CO Martinez) that Edgar A. Gearhart would not be taking his medications because he was going to the bathroom.

62.     With the door and curtain to Edgar A. Gearhart's cell shut, and Edgar A. Gearhart actively bleeding out inside, he did not have an opportunity to respond verbally or otherwise reply to Defendant Nurse Hobbs's medication call.

63.     In grossly negligent and reckless fashion, Defendant Nurse Hobbs and Defendant CO Martinez did not open the door to Edgar A. Gearhart's cell, pull back the curtain, look underneath it, or otherwise attempt to vet Defendant Pierce's representation that Edgar A. Gearhart was actually refusing his medications.

64.     Shockingly, with deliberate indifference to Edgar A. Gearhart's rights, Defendant Nurse Hobbs willfully, negligently, carelessly, and in a grossly negligent and/or reckless departure from the standard of care, accepted Defendant Pierce's representation at face value, did not question Edgar A. Gearhart directly as to whether or why he was purportedly refusing his

medication, and then marked Edgar A. Gearhart as noncompliant for refusing his medication despite her failure to have any personal interaction with him.

65.     Defendant Nurse Hobbs also failed, in a grossly negligent manner, by not even attempting to educate Edgar A. Gearhart on the consequences for supposedly refusing compliance with his nighttime medications.

66.     Had Defendant Nurse Hobbs responded to Edgar A. Gearhart's supposed non-compliance of medication with even a hint of scrutiny, or attempted to provide him with an opportunity to provide an informed refusal of medication, she would have identified not only that he was not refusing his medications, but worse, he was actively bleeding out, dying, in critical condition, and in need of immediate medical attention.

67.     In a grossly negligent, flagrant, and reckless departure from the standard of care demonstrating a conscious disregard to the welfare of Edgar A. Gearhart, Defendant Nurse Hobbs concluded her medication rounds without so much as observing or speaking to him.

68.     As Defendant Nurse Hobbs was leaving the second tier, Defendant Pierce (who moments earlier represented that Edgar A. Gearhart was refusing his medication) expressly told Defendant CO Martinez he "stuck" (i.e., stabbed) Edgar A. Gearhart, even though Defendant CO Martinez and Defendant CO Bralczyk knew or should have known about the stabbing from the audible commotion earlier on the cell block.

69.     Rather than calling for medical assistance to cell #66, Defendant CO Martinez's response was to laugh with Defendant Pierce, who then asked Defendant CO Martinez to unlock the door to Edgar A. Gearhart's cell.

70.     When Defendant CO Martinez completed the medication rounds on the second tier, he granted Defendant Pierce's request by unlocking the latch to Edgar A. Gearhart's cell from the second-tier bubble and/or by using his physical key to manually unlock it.

71.     Defendant CO Martinez opened/closed or locked/unlocked Edgar A. Gearhart's cell multiple times on January 28, 2021, by utilizing the control panel at the second-tier bubble of G-block.

72.     After the stabbing, and by virtue of the access provided to Edgar A. Gearhart's cell by Defendant CO Martinez, Defendant Pierce washed off Edgar A. Gearhart's body and the blood in cell #66 in an attempt to cover up the murder scene in furtherance of the conspiracy to harm Edgar A. Gearhart.

73.     As Edgar A. Gearhart was non-responsive, gurgling, and slowly dying from his wounds between the toilet and the wall of cell #66, other inmates observed him and attempted to render emergency aid to him on the floor.

74.     On January 28, 2021, after Defendant CO Martinez was directly informed by Inmate Diorio that Edgar A. Gearhart was bleeding out, Edgar A. Gearhart's cellmate, Maurice Freeman, went to Defendant CO Martinez to again inform him that Edgar A. Gearhart was dying, and Freeman did not want to be locked his cell overnight with a dead body.

75.     On information and belief, Freeman specifically told Defendant CO Martinez, as well as Defendant CO Bralczyk, of Edgar A. Gearhart's serious need for immediate medical attention.

76.     Defendants, CO Martinez and CO Bralczyk, purposefully, shockingly and intentionally ignored this information, thus delaying critical and lifesaving medical assistance for Edgar A. Gearhart.

18

77.     On information and belief, Freeman refused to go back to his cell for lockdown unless and until Defendants, CO Martinez and CO Bralczyk, addressed the situation or summoned medical staff to treat his cellmate, Edgar A. Gearhart.

78.     On information and belief, Defendant CO Bralczyk did nothing in response to the inmate reports of Edgar A. Gearhart's critical condition.

79.     Instead of immediately calling for or providing medical assistance to Edgar A. Gearhart, after being actually informed of his critical condition on at least three (3) occasions, Defendant CO Martinez proceeded to perform a complete and full "pipe round" of the entire G-block (i.e., an intentionally circuitous route) before eventually arriving at Edgar A. Gearhart's cell.

80.     Prior to 8:30 p.m., on January 28, 2021, Defendant CO Bralczyk also failed to call for or provide medical assistance to Edgar A. Gearhart, and in doing so, affirmatively acquiesced, coordinated, and acted in concert with Defendant CO Martinez's decision to withhold vital medical attention from Edgar A. Gearhart.  This was consistent with Defendant CO Martinez's directive to Defendant Pierce to take the fight upstairs (which Defendant CO Bralczyk knew about), and Defendant CO Martinez's other actions before, during and after medication rounds that evening, in furtherance of the conspiracy to cause physical and constitutional injury to Edgar A. Gearhart.

81.     Due to the callous, wanton, and purposeful actions of Defendants, Pierce, CO Martinez and CO Bralczyk, emergency medical services were not activated until 8:33 p.m. (over thirty minutes after the medication rounds), Defendant Sergeant Gordon did not arrive to cell #66 until that time, and Edgar A. Gearhart did not arrive to the SCI Dallas facility trauma room until 8:39 p.m. (on information and belief, roughly one hour after the initial stabbing by Pierce).

82.     After Edgar A. Gearhart arrived at the SCI Dallas facility trauma room, life saving measures continued, but as medical staff contacted Wilkes-Barre General Hospital for a potential transfer, Edgar A. Gearhart was pronounced dead at 9:05 p.m.

83.     At or about 9:47 p.m., on January 28, 2021, almost two (2) hours after walking past Edgar A. Gearhart's cell without dispensing his medications, questioning the basis or the circumstances of his reason for not taking same, and callously accepting Defendant Pierce's refusal on Edgar A. Gearhart's behalf without any personal interaction with him, Defendant Nurse Hobbs recorded Edgar A. Gearhart's medication administration record maintained by SCI Dallas and the DOC as "NON-COMPLAINT" due to purported "REFUSAL."

84.     On information and belief, Defendants, Sergeant Gordon and Captain Meyer, failed at all times material hereto to properly supervise, control, or command the G-Block housing unit during the 2:00 p.m. to 10:00 p.m. shift manned by Defendants, CO Martinez and CO Bralczyk, the Correctional Officers for whom they were responsible during that time as ranking officers.

85.     The failures of Defendants, Sergeant Gordon and Captain Meyer, was a substantial factor in creating the circumstances for, contributing to, and causing the unreasonably dangerous conditions of incarceration of Edgar A. Gearhart, by enabling subordinates like Defendants, Defendants, CO Martinez and CO Bralczyk, to conspire with one another and an inmate, Defendant Pierce, to inflict serious physical and constitutional harm upon Plaintiff-Decedent, Edgar A. Gearhart.

86.     Later that evening on January 28, 2021, after Edgar A. Gearhart was finally provided medical assistance (albeit too late to save his life), Defendant CO Martinez was interviewed by Pennsylvania State Police at or about 11:10 p.m.  During the interview, Defendant CO Martinez purposely and intentionally lied about the circumstances of Edgar A. Gearhart's

death, including concealing the identity and involvement of Defendant Pierce, thereby obstructing the police's investigation into Edgar A. Gearhart's death, in furtherance of the underlying conspiracy.

87.    On the evening of January 28, 2021, following his direct involvement and personal participation in the death of Edgar A. Gearhart, but before his police interview, Defendant CO Martinez prepared and filed a false written state prison report regarding the circumstances of Edgar A. Gearhart's death.

88.    On information and belief, Defendants, Sergeant Gordon and Captain Meyer, did not scrutinize the false written state prison report prepared by Defendant CO Martinez, and therefore intentionally acquiesced in the cover up of Edgar A. Gearhart's murder, as a further representation of the culture of indifference at SCI Dallas to the rights of inmates incarcerated under the DOC's custody, care, and control.

89.    On January 29, 2021, an autopsy was performed on Edgar A. Gearhart at the Luzerne County morgue by forensic pathologist, Charles Siebert, M.D.  The cause of death was determined to be a stab wound to the neck, and the manner of death was ruled a homicide.

90.    As a direct and proximate result of the concerted acts and conduct of the Conspiring Defendants, Edgar A. Gearhart sustained serious injuries including, but not limited to:

    a.    several large, deep lacerations extending to the soft tissues of the left shoulder and neck area;
    b.    a large laceration to the right knee/kneecap;
    c.    visible 2nd degree, open blistered burns to the left arm and the front and back of his left-upper torso/trunk;
    d.    numerous self-defense wounds, such as contusions, lacerations, and abrasions on his body surfaces, including his hands, knuckles, fingers, and under his fingernails;
    e.    left-sided hemothorax and internal bleeding;
    f.    respiratory distress;
    g.    cardiopulmonary demise and arrest; and
    h.    death.

91.     In connection with the above-referenced injuries, Edgar A. Gearhart endured tremendous conscious pain and suffering up to and until his death.

92.     The death of 24-year-old, Edgar A. Gearhart, was due to the Conspiring Defendants' total disregard and deliberate indifference towards his safety and security, despite being specifically informed of the fact that he was going to be critically injured and that he was dying in his cell after being beaten, stabbed and burned.

**COUNT I**
**42 U.S.C. §12132, *et seq.* – VIOLATION OF THE ADA**
**Plaintiff, Amy Gearhart v. Defendant, Pennsylvania Department of Corrections ("DOC")**

93.     The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

94.     Title II of the Americans with Disability Act ("ADA") states, in relevant part: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity."   42 U.S.C. §12132.

95.     Under the ADA, a qualified individual means an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices…meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. §12131(2).

96.     A "public entity" is defined as "any State," the state's agencies, and their instrumentalities.  42 U.S.C. §12131(1).

97.     Under the ADA, "disability" includes "mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. §12102(2) (defining disability).

98.     At all relevant times, Edgar A. Gearhart was a qualified individual with a disability. In particular, as of January 28, 2021, the DOC's psychiatric clinic determined Edgar A. Gearhart suffered from serious mental illness—depressive disorder and "attention deficit/hyperactivity disorder, Combined presentation."

99.     At all relevant times, the DOC, SCI Dallas, and the psychiatric clinic and medical staff at SCI Dallas qualified as a public entity, state agency, and/or their instrumentalities.

100.     At all relevant times, the DOC's medical services, including the diagnosis of mental illnesses or conditions by the SCI Dallas psychiatric clinic and the prescription and administration of medications to treat those conditions by its medical staff (including Defendant Nurse Hobbs) qualify as a public service, program, or activity for which Edgar A. Gearhart met the essential eligibility requirements.

101.     The DOC was actually aware of Edgar A. Gearhart's serious mental illness because it was their psychiatric clinic and medical staff at SCI Dallas who diagnosed him with the aforementioned disorders.

102.     To treat his depressive disorder and attention deficit/hyperactivity disorder, the DOC's psychiatric clinic prescribed Edgar A. Gearhart Duloxetine and Guanfacine.

103.     In late 2020, Edgar A. Gearhart's prescription for Duloxetine was increased from once to twice per day (including one dose at nighttime).

104.     On the evening of January 28, 2021, Defendant Nurse Hobbs was performing medication rounds for the express purpose of providing and/or administering medications to inmates who required evening doses, like Edgar A. Gearhart, before the G-Block was locked down for the night.

105.     In an egregious, flagrant, grossly negligent, and reckless manner, Defendant Nurse Hobbs did not question or scrutinize why Edgar A. Gearhart was refusing his medication, and allowed another inmate to refuse on his behalf by accepting Defendant Pierce's representation that Edgar A. Gearhart was not going to take his medications that night, because of Edgar A. Gearhart's status as a patient diagnosed by the DOC with a serious mental illness.

106.     Defendant Nurse Hobbs accepted another inmate's refusal of medication on Edgar A. Gearhart's behalf because the DOC lacked any policy requiring medical staff to actually interact

with inmates, such as Edgar A. Gearhart, to confirm the circumstances and/or reason for a refusal of prescribed medication before marking them as non-compliant.

107.    The DOC discriminated against Edgar A. Gearhart by failing to promulgate policies, procedures, and protocols that would ensure that inmates suffering from a serious mental illness actually had an opportunity to take or refuse medication themselves.

108.    The DOC discriminated against Edgar A. Gearhart by failing to train officers and medical staff to actually interact with inmates, and confirm the circumstances and/or reason for a refusal of prescribed medication, before marking them as non-compliant.

109.    As a result of the DOC's failure to make reasonable modifications to policies and procedures, and the DOC's failure to train officers and medical staff regarding the administration of medications, Edgar A. Gearhart was denied necessary reasonable accommodations.

110.    Defendants' acts and omissions resulted in disability discrimination in violation of Title II of the Americans with Disabilities Act.

**WHEREFORE**, pursuant to the Americans with Disabilities Act, 42 U.S.C. §12132, *et seq.*, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT II
## 42 U.S.C. §1983 – FAILURE TO PROTECT
**Plaintiff, Amy Gearhart v. Defendants, CO Martinez, CO Bralczyk,**
**the Doe Defendants and Nurse Hobbs**

111.   The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

112.   Plaintiff believes and avers that Defendants deliberately, recklessly and maliciously failed to take reasonable measures to ensure Edgar A. Gearhart's safety from attack by other inmates and, instead, acted in such a manner as to initiate, instigate, encourage, facilitate and incite inmate-on-inmate assaults like Defendant Pierce's attacks of Edgar A. Gearhart.

113.   Plaintiff further avers and believes that Defendant Nurse Hobbs acted negligently, grossly negligently, and recklessly by failing to protect Edgar A. Gearhart and egregiously allowing another inmate to refuse his medications to teat his mental illness without actually having any personal interaction with him.

114.   The above-described conditions of incarceration posed a substantial risk of harm to Edgar A. Gearhart, of which the Defendants were aware and to which Defendants were deliberately indifferent.

115.   Edgar A. Gearhart's injuries were a foreseeable and a direct consequence of all of the above failures, acts and omissions by Defendants.  Edgar A. Gearhart's injuries were also actually known to Defendants, who deliberately, recklessly and maliciously failed to take reasonable measures to provide immediate medical assistance to Edgar A. Gearhart.

116.   All of these actions violated Edgar A. Gearhart's rights under the Eighth and Fourteenth Amendments to the United States Constitution, Article I §13 of the Constitution of the Commonwealth of Pennsylvania, and the laws of the United States and the Commonwealth of Pennsylvania, and are in violation of Edgar A. Gearhart's rights pursuant to 42 U.S.C. §1983.

117.    The above-described actions of the Defendants were so malicious, intentional, and reckless, and displayed such a callous, conscious, reckless and deliberate indifference to Edgar A. Gearhart's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT III
## 42 U.S.C. §1983 – BYSTANDER LIABILITY
**Plaintiff, Amy Gearhart v. Defendants, CO Martinez, CO Bralczyk,
the Doe Defendants, and Nurse Hobbs**

118.    The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

119.    Plaintiff also asserts that Defendants failed to intervene, impede, and/or in any way attempt to stop the assault once it had begun, and failed to provide immediate life-saving medical care to Edgar A. Gearhart to mitigate the harm and resultant conscious pain and suffering, before he succumbed to his injuries.

120.    Edgar A. Gearhart's injuries were actually known to Defendants, who deliberately, recklessly and maliciously failed to take reasonable measures to provide immediate medical assistance to Edgar A. Gearhart.

121.    Defendants had multiple realistic and reasonable opportunities to intervene and stop the assault of Edgar A. Gearhart, but failed to do so.  Instead, Defendants stood by and did nothing to impede the assaults, provide medical assistance, or otherwise mitigate the risk of the substantial harm to Edgar A. Gearhart.

122.    Plaintiff believes and therefore avers that Defendants deliberately, recklessly and maliciously failed to intervene and/or in any way attempt to stop the assault once it had begun or provide life-saving medical care to Edgar A. Gearhart once serious physical harm had been inflicted.

123.    Defendant Nurse Hobbs also had a realistic and reasonable opportunity to identify Edgar A. Gearhart's medical needs at the time of her medications round on the second tier of G-Block at approximately 8:00 p.m., but deliberately, recklessly, and flagrantly failed to determine whether Edgar A. Gearhart was personally refusing his medications by blindly accepting the

representation of Defendant Pierce that Edgar A. Gearhart had no intent on taking his nighttime medications.

124.     Defendant Nurse Hobbs was also grossly negligent by decidedly failing to obtain an informed refusal from Edgar A. Gearhart and did not personally interact with him to confirm his noncompliance with the medications prescribed for his mental illness.

125.     Edgar A. Gearhart's injuries and death were foreseeable, foreseen and actually known to Defendants and were the direct and proximate consequence of all of the above failures, acts and omissions by Defendants.

126.     Defendants' actions violated Edgar A. Gearhart's rights under the Eighth and Fourteenth Amendments to the United States Constitution, Article I §13 of the Constitution of the Commonwealth of Pennsylvania, and the laws of the United States and the Commonwealth of Pennsylvania and are in violation of Edgar A. Gearhart's rights pursuant to 42 U.S.C. §1983.

127.     The above-described actions of Defendants were so malicious, intentional, and reckless, and displayed such a callous, conscious, reckless and deliberate indifference to Edgar A. Gearhart's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT IV
## 42 U.S.C. §1983 – CIVIL CONSPIRACY
### Plaintiff, Amy Gearhart v. Defendants, CO Martinez, CO Bralczyk, the Doe Defendants and Pierce

128.    The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

129.    The Conspiring Defendants entered into an agreement and/or reached a meeting of their minds to violate Edgar A. Gearhart's Constitutional Rights by, *inter alia*, (a) permitting, encouraging, facilitating and inciting inmates, in this case Defendant Pierce, to inflict violence upon and cause physical harm to Edgar A. Gearhart; (b) conversing with each other and other inmates about the serious physical harm that was going to be, and after-the-fact, was inflicted upon Edgar A. Gearhart; (c) failing to provide him emergency medical assistance; (d) concealing his condition from Defendant Nurse Hobbs; and (e) lying to investigators in an attempt to cover up the true circumstances of the events surrounding Edgar A. Gearhart's death.

130.    As detailed above, on January 28, 2021, the Conspiring Defendants entered into a conspiracy to harm Edgar A. Gearhart, and deny Edgar A. Gearhart of his constitutional rights and privileges under the Constitution of the United States and the laws of the United States and of the Commonwealth of Pennsylvania.

131.    The Conspiring Defendants performed overt, concerted and coordinated acts in furtherance of the conspiracy during the evening hours of January 28, 2021, in the G-Block housing unit of SCI Dallas.

132.    The conspiracy directly and proximately resulted in harm to Edgar A. Gearhart, including the deprivation of his rights and privileges under the Constitution of the United States and the Laws of the Commonwealth of Pennsylvania, as described herein.

133.   As a direct and proximate result of the malicious, intentional and reckless actions of the Conspiring Defendants in carrying out the conspiracy to violate Edgar A. Gearhart's rights, he suffered injuries, including but not limited to stab wounds, burns, and tremendous conscious pain and suffering leading to his death, as described elsewhere herein.

134.   As alleged in further detail below, *infra* Count IX, the Correctional Officer Defendants' knowledge, participation, acquiescence and overt acts and decision-making in furtherance of the conspiracy renders each co-conspirator liable as a joint tortfeasor for all damages ensuing from the harm inflicted upon Edgar A. Gearhart, irrespective of whether they were a direct actor and regardless of the degree of his or her activity in bringing about the physical injuries to Edgar A. Gearhart and his resultant death.

135.   The above-described actions of Defendants, in their individual capacities, were so malicious, intentional and reckless and displayed such a reckless indifference to Edgar A. Gearhart's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

**COUNT V**
**42 U.S.C. §1983 – POLICY, CUSTOM, PATTERN AND PRACTICE**
**Plaintiff, Amy Gearhart v. Defendants, Superintendent Ransom, CO Martinez,**
**CO Bralczyk, Captain Meyer, Sergeant Gordon and the Doe Defendants**

136.    The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

137.    Plaintiff believes and, therefore, avers that Defendants, Superintendent Ransom, Captain Meyer, Sergeant Gordon, and the Correctional Officer Defendants, have adopted and maintained for many years policies, customs and practices, which were recognized and accepted within the prison but created cruel and unusual conditions of incarceration and resultant physical and constitutional harm, including, but not limited to, the following:

   a.    Allowing inmates to exercise control over each other;
   b.    Encouraging or allowing correctional officers to delegate officer functions and duties to inmates;
   c.    Permitting correctional officers to appoint inmates to be in charge of prison phones and other conditions of incarceration, thereby encouraging, facilitating and inciting potential inmate-on-inmate arguments and assaults;
   d.    Permitting private arrangements and/or favors exchanged between inmates and correctional officers;
   e.    Allowing correctional officers to perform their duties with partiality to the detriment of certain inmates, like Plaintiff-decedent Edgar A. Gearhart;
   f.    Allowing correctional officers to facilitate, encourage and incite inmate fights by taunting inmates and allowing inmates to taunt and threaten other inmates;
   g.    Allowing correctional officers to facilitate, encourage and incite inmate fights by opening otherwise-locked cell doors, directing inmates to certain locations to fight, and allowing violent inmates access to other inmates;
   h.    Allowing correctional officers to facilitate, encourage and incite inmate fights in the cells on a housing block out of the purview and surveillance of other prison staff;
   i.    Allowing correctional officers to facilitate, encourage and incite inmate-on-inmate assaults by failing to properly and timely respond to them, break them up, and summon or provide medical assistance/treatment;
   j.    Having a custom, policy and practice of ignoring, failing to report, and/or downplaying the seriousness of inmate-on-inmate violence, thereby acquiescing to an environment where inmate-on-inmate violence is accepted;

32

k. Having a custom, policy and practice of failing to properly train, supervise, investigate and discipline correctional staff in order to prevent inmate-on-inmate assaults from occurring;

l. Having a custom, policy and practice of failing to properly train, supervise, investigate and discipline correctional staff to ensure that emergency medical care is provided to at-need inmates in a timely manner;

m. Having a custom, policy and practice of failing to appropriately identify inmates who should be placed in protective custody and/or failing to place those inmates in protective custody;

n. Having a custom, policy and practice of failing to ensure that inmates (including but not limited to pre-trial detainees) are humanely treated at all times, including but not limited to being provided timely medical treatment;

o. Having a custom, policy and practice of failing to provide adequate, proper and timely medical care to individuals such as the Plaintiff who have been assaulted within the facility; and

p. Having a custom, policy and practice of allowing inmates and/or officers refuse medication on behalf of an inmate prescribed the medication.

138. Defendants, Superintendent Ransom, Captain Meyer, Sergeant Gordon, and the Correctional Officer Defendants, knew that the aforementioned policies and procedures would create dangerous, cruel, and unusual conditions of incarceration, place inmates like Edgar A. Gearhart in positions of unreasonable danger and extreme vulnerability, increase the risk and severity of danger posed to inmates like Edgar A. Gearhart, and ultimately caused Edgar A. Gearhart to suffer grave physical and constitutional injuries as described herein.

139. Defendants have been deliberately indifferent to individuals, such as Edgar A. Gearhart, for the reasons set forth hereinabove, which deliberate indifference violates Edgar A. Gearhart's rights under the Eighth and Fourteenth Amendments of the Constitution of the United States, Article I §13 of the Constitution of the Commonwealth of Pennsylvania, the laws of the United States, and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C. §1983.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

**COUNT VI**
**42 U.S.C. §1983 – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**
**Plaintiff, Amy Gearhart v. Defendants, CO Martinez, CO Bralczyk,**
**the Doe Defendants and Nurse Hobbs**

140.    The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

141.    Defendants were aware of the nature of Edgar A. Gearhart's serious injuries caused by the assault and stabbing, but they acted with deliberate indifference when they failed to provide him with timely and appropriate medical care and treatment and/or summon medical providers at SCI Dallas so that Edgar A. Gearhart's serious medical needs could be promptly addressed and appropriately treated.

142.    Defendants also acted with deliberate indifference to Edgar A. Gearhart's serious medical needs after the assault and stabbing by failing to obtain a response from him, personally interact with him, and assess his status in the absence of any response or personal interaction at the time of medication rounds before the lockdown of the G Block at SCI Dallas.

143.    Defendants' deliberate indifference to Edgar A. Gearhart's serious medical needs led to withholding of medical care after the assault and stabbing, exacerbated his physical and emotional pain and suffering, prevented the medical staff at SCI Dallas from providing meaningful care and treatment, considerably diminished any possibility of saving his life, and was a substantial factor in causing his death, in furtherance of the conspiracy to inflict serious harm upon Edgar A. Gearhart.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT VII
## 42 U.S.C. §1983 – STATE-CREATED DANGER
**Plaintiff, Amy Gearhart v. Defendants, Superintendent Ransom,
CO Martinez, CO Bralczyk, Captain Meyer, Sergeant Gordon,
the Doe Defendants and Nurse Hobbs**

144.   The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

145.   At all times relevant thereto, Defendants, acting in their individual capacities, were "persons," and acting under color of state law, pursuant to 42 U.S.C. §1983.

146.   Defendants' constitutional torts are not governed or limited by 42 Pa.C.S.A. §8451, *et seq.*, or 42 Pa.C.S.A. §8521, *et seq.*

147.   The specific harms to which the Defendants exposed Edgar A. Gearhart were foreseeable and direct in that they knew that Pierce intended to harm Edgar A. Gearhart, and despite this knowledge, Defendants facilitated and created an area and the mechanisms for the harm to occur, and knew that these actions would result in danger, severe injuries and serious harm, and even the death of Edgar A. Gearhart.

148.   At all times material hereto, Defendants were bound, as previously set forth herein, by the Eighth and Fourteenth Amendments to the United States Constitution, Article I §13 of the Constitution of the Commonwealth of Pennsylvania, as well as, upon information and belief, the DOC's own policies, rules and regulations for the management, safety, care, and oversight of inmates placed in their care, custody and control.

149.   In direct contravention and violation of the Eighth and Fourteenth Amendments and, upon information and belief, in violation of the DOC's own policies, procedures, and regulations, Defendants recklessly, willfully, and with deliberate indifference, facilitated, instigated and created a location for Pierce to harm Edgar A. Gearhart, and despite the knowledge

that these actions and practices placed Edgar A. Gearhart in lethal danger, failed to take any action to prevent the assault from happening, and then after being informed of Edgar A. Gearhart's injuries, failed to take action.

150. While acting under color of state law, Defendants affirmatively created the danger or risk of harm that led to Edgar A. Gearhart's death as follows:

a. Knowing that Pierce intended to harm Edgar A. Gearhart and instructing him to conduct the assault in the cell, despite the known risk of lethal danger;

b. Affirmatively placing Edgar A. Gearhart in a foreseeably dangerous location at a dangerous time, and leaving him there despite knowledge of such dangers;

c. Rendering Edgar A. Gearhart more vulnerable to harm by specifically instructing Pierce to conduct his assault away from cameras and other correctional officers, knowing that he would be assaulted and potentially murdered;

d. Permitting and/or otherwise causing Edgar A. Gearhart to be exposed to the harms and dangers of other inmates that were known to want to harm him, as described herein, despite the obvious lethality of that known danger;

e. Permitting and/or otherwise causing Edgar A. Gearhart to be exposed to physical and psychological harm and death;

f. Despite recognizing the danger of a known threat to the life of Edgar A. Gearhart, Defendants continued the dangerous practice of failing to separate or segregate inmates;

g. Allowing and facilitating Edgar A. Gearhart's assailant to enter and re-enter his cell;

h. Granting access to cell #66 to Edgar A. Gearhart's assailant, and opening/unlocking the cell, facilitating further injury to Edgar A. Gearhart;

i. Failing to adequately protect Edgar A. Gearhart from physical assault and fatal injuries on their premises;

j. Failing to appropriately monitor the G-Block housing unit and other areas of SCI Dallas by implementing an inadequate surveillance system of the main block and the vicinity of individual cell units, such as Edgar A. Gearhart's cell #66;

k. Failing to confirm Edgar A. Gearhart's refusal of prescribed medication, and instead marking him as non-compliant, based solely on the representation of another inmate and without any personal interaction with the patient-inmate;

l. Failure to enforce codes, regulations and policies with respect to maintaining the safety and well-being of prisoners in their care custody and control in the exercise of their power possessed by virtue and authority of

state law, including, but not limited to Department of Corrections Code of Ethics, General and Post Orders:

   i.   61 P.S.A. § 1726 (Duties of the Warden);

   ii.   61 P.S.A. § 5001, *et seq.* (Community Corrections Centers and Community Corrections Facilities);

   iii.   61 P.S.A. § 5901, *et seq*. (Miscellaneous Provisions, (including Physical Welfare of Inmates)).

m.   Willfully subjecting Edgar A. Gearhart to physical and psychological harms, including conscious pain and suffering and death, as described herein; and

n.   Such other deliberately indifferent, reckless, willful and wanton conduct resulting in the violation of Edgar A. Gearhart's rights that shall be revealed through discovery prior to trial.

151.   Defendants maintained care and control over Edgar A. Gearhart and his assailant when they instigated and facilitated the assault on Edgar A. Gearhart, placed Edgar A. Gearhart in the highly dangerous and foreseeably lethal situation by providing unfettered access to him, and then failed to appropriate respond to numerous pleas to get him emergency medical care in a reckless fashion with conscious disregard for his constitutional rights.

152.   Defendants created a situation whereby Edgar A. Gearhart lacked an ability to meaningfully defend himself.

153.   Defendants, while acting under color of state law, unlawfully and/or unreasonably, willfully, recklessly, maliciously and/or with deliberate indifference to Edgar A. Gearhart's rights, violated 42 U.S.C. §1983 and deprived Edgar A. Gearhart of his rights, as guaranteed under the Eighth and Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution (e.g. Article I §13), Federal Law, State Law and/or local law in that these Defendants, without lawful basis, caused Edgar A. Gearhart's murder by creating the dangerous conditions to which Edgar A. Gearhart was exposed, in violation of his aforesaid guaranteed rights, as set forth in the preceding paragraphs of this Complaint.

154.    The danger affirmatively created by Defendants, as set forth above, was foreseeable and direct.

155.    Defendants' deliberate or reckless indifference, and callous disregard for the foreseeable danger they created for Edgar A. Gearhart, shocks the conscience.

156.    In creating the danger as set forth above, Defendants were complicit in the murder of Edgar A. Gearhart, willfully disregarded the safety of Edgar A. Gearhart, and did so with ample time to formulate a judgment regarding the appropriate response that would protect inmates like Edgar A. Gearhart from further physical and constitutional injury.

157.    As the facts set forth in this Complaint demonstrate, Defendants knew or should have known that through their actions, and by failing to take action to stop and prevent such danger, Edgar A. Gearhart was exposed to serious harm and death, and such conduct established a deliberate indifference towards Edgar A. Gearhart's life.

158.    Defendants' affirmative actions violated Edgar A. Gearhart's constitutional right to personal liberty and security, and his right to substantive due process guaranteed by the Fourteenth Amendment.

159.    Defendants' acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Edgar A. Gearhart's death, and the Defendants are therefore liable to Plaintiff under 42 U.S.C. §1983.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

**COUNT VIII**
**42 U.S.C. §1983 – DEPRIVATION OF RIGHTS IN SPECIAL RELATIONSHIP**
**Plaintiff, Amy Gearhart v. Defendants, Superintendent Ransom,**
**CO Martinez, CO Bralczyk, Captain Meyer, Sergeant Gordon,**
**the Doe Defendants and Nurse Hobbs**

160.   The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

161.   At all times relevant hereto, Defendants were all "persons" and were acting under "color of state law" pursuant to 42 U.S.C. §1983 by providing care, custody and/or control over Edgar A. Gearhart either directly, by delegated authority, via contractual authority, and through the promulgation, implementation, and enforcement of the DOC's policies and procedures.

162.   The specific harms to which Defendants exposed Edgar A. Gearhart were foreseeable and direct in that they knew that harm and injury was intended for Edgar A. Gearhart, and further, that failing to take action would result in severe and lasting harm, and even death, to him.

163.   At all times material hereto, Defendants were duty-bound by the ADA, various Pennsylvania statutes, as well as, upon information and belief, the DOC's own policies, rules and regulations for the management of inmates placed in their care.

164.   In direct contravention and in violation of those Pennsylvania statutes and upon information and belief, and in violation of the DOC's own rules, regulations and policies, Defendants recklessly and willfully subjected Edgar A. Gearhart to physical and psychological harms, as described herein, even though such harms were foreseeable and posed a serious risk of death.

165.    At all times material hereto, and upon information and belief, Defendants violated the DOC's own rules, regulations and policies for the management and supervision of individuals placed in their custody.

166.    At all times relevant hereto, a "special relationship" existed between the Defendants and Edgar A. Gearhart, as he was in their care, custody and control during his incarceration.

167.    Upon information and belief, a "special relationship" existed between Edgar A. Gearhart and Defendants for purposes of 42 U.S.C. §1983, as Edgar A. Gearhart was placed in their care as an inmate, and that care was custodial in nature and resulted in the deprivation of Edgar A. Gearhart's life and liberty.

168.    Defendants, while acting under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference to the Edgar A. Gearhart's rights, violated 42 U.S.C. §1983 and deprived Edgar A. Gearhart of his rights as guaranteed under the Eighth and/or Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution (e.g. Article I §13), Federal Law, State Law and/or local law in that these Defendants, without lawful basis, caused the aforementioned injuries and damages to Edgar A. Gearhart and Plaintiff as described in this Complaint, in violation of the aforesaid guaranteed rights as follows and upon information and belief:

    a.    Negligently, carelessly and recklessly placing Edgar A. Gearhart in a place which they knew exposed him to grave danger;

    b.    Failure to properly screen, train and supervise employees and agents which allowed the harms suffered by Edgar A. Gearhart to occur;

    c.    Permitting and/or otherwise causing Edgar A. Gearhart to be exposed to the harms and dangers of a known threat to the life and well-being of Edgar A. Gearhart, despite the dangers being known and obvious;

    d.    Permitting and/or otherwise causing Edgar A. Gearhart to be exposed to physical and psychological harm and death;

    e.    Failing to adequately protect Edgar A. Gearhart from physical assault and fatal injuries on their premises;

    f.    Allowing Edgar A. Gearhart's assailant to enter Cell #66;

Case 3:22-cv-01334-JFS   Document 1   Filed 08/25/22   Page 42 of 60


g. Granting access to Cell #66 to Edgar A. Gearhart's assailant, and opening/unlocking his cell;

h. Failure to enforce codes, regulations and policies with respect to maintaining the safety and well-being of prisoners in their care custody and control in the exercise of their power possessed by virtue and authority of state law, including, but not limited to Department of Corrections Code of Ethics, General and Post Orders:

    i. 61 P.S.A. § 1726 (Duties of the Warden);

    ii. 61 P.S.A. § 5001, *et seq.* (Community Corrections Centers and Community Corrections Facilities);

    iii. 61 P.S.A. § 5901, *et seq.* (Miscellaneous Provisions, (including Physical Welfare of Inmates)).

i. Such other deliberately indifferent, reckless, and willful and wonton conduct resulting in the violation of Edgar A. Gearhart's rights that shall be revealed through discovery prior to trial.

169. Defendants' aforesaid conduct, initiated under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference violated 42 U.S.C. §1983 and deprived Edgar A. Gearhart of his rights as guaranteed under the Eighth and/or Fourteenth Amendments to U.S. Constitution, similar provisions of the Pennsylvania Constitution (e.g. Article I §13), Federal Law, State Law and/or local law without lawful basis, thus causing injuries and damages to Edgar A. Gearhart as set forth herein.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

**COUNT IX**
**42 U.S.C. §1983 – FAILURE TO INTERVENE**
**Plaintiff, Amy Gearhart v. Defendants, CO Martinez, CO Bralczyk,**
**the Doe Defendants and Nurse Hobbs**

170.    The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

171.    By their conduct, Defendants, acting within the scope of their employment and therefore under color of state law, had opportunities to intervene on behalf of Edgar A. Gearhart to prevent his death, but, with conscious and deliberate indifference, declined to do so.

172.    Defendants' failures to intervene violated Edgar A. Gearhart's clearly established constitutional rights and privileges as a citizen of the United States, as guaranteed by the Eighth and Fourteenth Amendments.

173.    Defendants' acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Edgar A. Gearhart's injuries.

174.    Defendants knew, or should have known, that their conduct would result in grave injury and/or death to Edgar A. Gearhart.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

**COUNT X**
**COMMON LAW ASSAULT**
**Plaintiff, Amy Gearhart v. Defendants, CO Martinez, CO Bralczyk,**
**the Doe Defendants and Pierce**

175.     The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

176.     During and/or contemporaneous with the verbal altercations and physical confrontations between Edgar A. Gearhart and Defendant Pierce at the prison phones, on the staircase leading to the second tier, on the second tier itself, and/or inside or immediately outside of cell #66, Defendant Pierce intended to cause a harmful or offensive contact, or an imminent apprehension of such contact, with Edgar A. Gearhart.

177.     Edgar A. Gearhart was both subjectively and objectively placed in imminent apprehension of the apparent and eventual contacts intended and inflicted by Defendant Pierce.

178.     The Conspiring Defendants desired and knew the likely consequences of their conduct in encouraging, inciting, and then failing to respond to Defendant Pierce's acts at the prison phones, on the staircase leading to the second tier, on the second tier itself, and/or inside or immediately outside of cell #66, because it was in furtherance of the conspiracy to physically and constitutionally harm Edgar A. Gearhart.

179.     The Correctional Officer Defendants were present and/or within the immediate vicinity of the assault, directed the assault, knew it was bound to occur, and intended the assault to occur by reason of their actions in furtherance of the conspiracy to physically and constitutionally harm Edgar A. Gearhart, as alleged herein.  Indeed, given CO Martinez's conduct before and after the stabbings, at times, he was a principal actor who actively participated in the multiple assaults placing Edgar A. Gearhart in imminent apprehension of the offensive contacts described herein.

180.    The Correctional Officer Defendants are vicariously liable for Defendant Pierce's assault of Edgar A. Gearhart because they were parties to the conspiracy to deprive Edgar A. Gearhart of his constitutional rights; Defendant Pierce's assault of Edgar A. Gearhart fell within the scope of the unlawful object of the conspiracy; the Correctional Officer Defendants' took overt actions and inactions in furtherance of accomplishing the end-goal of violating Edgar A. Gearhart's constitutional rights; and Correctional Officer Defendants could reasonably foresee the injuries inflicted upon Edgar A. Gearhart by Defendant Pierce (including his death) as a necessary and/or natural consequence therefrom.

181.    The Correctional Officer Defendants, acting in concert and coordination with Defendant Pierce, as alleged herein, intended to put Edgar A. Gearhart in reasonable and immediate fear of harmful or offensive contact with his body.

182.    The Correctional Officer Defendants deliberately, recklessly and maliciously failed to take reasonable measures to ensure the safety of Edgar A. Gearhart, who was in their custody, care and control, from attack by other inmates and, instead, acted in such a manner as to initiate, instigate, encourage, facilitate and incite inmates to assault other inmates and specifically, Edgar A. Gearhart.

183.    Correctional Officer Defendants used their status of authority and power, granted to them by way of employment with the DOC, to encourage, coerce, influence, and provide Defendant Pierce's access to Edgar A. Gearhart to assault Plaintiff-Decedent by instigating and escalating the initial confrontation by the prison phones in the G-block housing unit, directing Defendant Pierce to physically confront Edgar A. Gearhart in the second tier of G-block (out of the plain sight of surveillance and/or other SCI Dallas staff), failing to monitor the area where the initial assault occurred, laughing at the situation upon learning that Edgar A. Gearhart was

viciously stabbed and/or burned, withholding medical attention, and deliberately and wantonly providing Defendant Pierce unfettered access to Edgar A. Gearhart by opening cell #66 for the obvious purpose of placing him in fear and apprehension of grave and deadly physical harm.

184.    At all times relevant hereto, the Conspiring Defendants were aware that Defendant Pierce was going to attack Edgar A. Gearhart, and became aware after the stabbing attack that he was in critical condition in his cell; yet, despite this knowledge, Defendants recklessly disregarded the safety of Edgar A. Gearhart and refused to intervene and stop the attack from continuing because it was in furtherance of the aforementioned conspiracy.

185.    As a result of the unlawful conduct of Conspiring Defendants, which took place within the course and scope of their employment, as well as the conspiracy to violate Edgar A. Gearhart's constitutional rights, Edgar A. Gearhart was verbally berated by both Defendant CO Martinez and Defendant Pierce, threatened by Defendant Pierce, and was placed in fear of imminent offensive and harmful contacts to his body by virtue of Defendant Pierce's violent posturing, the laughter of Defendant CO Martinez and Defendant Pierce, and in between the multiple attacks referenced herein. attacked and, immediately before, during and after the vicious attacks, suffered great pain of mind and body, shock, and ultimately death.

186.    The harms, injuries, losses and damages suffered by Edgar A. Gearhart were directly and proximately caused by the outrageous, willful, wanton, malicious conduct of the Conspiring Defendants, as described more fully herein.

187.    Because of the grossly negligent, wanton, and outrageous conduct of Defendants, as set forth in this Complaint, Plaintiff is entitled to punitive damages.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT XI
## COMMON LAW BATTERY
### Plaintiff, Amy Gearhart v. Defendants, CO Martinez, CO Bralczyk, the Doe Defendants and Pierce

188.    The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

189.    Following the verbal altercation at the prison phones, and during and/or contemporaneous with and/or after the altercation on the staircase broken up by inmates, Defendant Pierce initiated multiple physical confrontations between Edgar A. Gearhart and Defendant Pierce in on the second tier of G-Block, inside cell #66, and immediately outside of cell #66.

190.    With each physical confrontation as alleged herein, Defendant Pierce intended to cause a harmful or offensive contact with Edgar A. Gearhart.

191.    The Conspiring Defendants desired the consequences of Defendant Pierce's acts at the prison phones, on the staircase leading to the second tier, on the second tier itself, and/or inside or immediately outside of cell #66 because it was in furtherance of the conspiracy to physically and constitutionally harm Edgar A. Gearhart.

192.    Defendants, CO Martinez, CO Bralczyk, and the Doe Defendants, inclusive, acting in concert and coordination with Defendant Pierce, as alleged herein, intended to intrude on Edgar A. Gearhart's physical and personal dignity by creating conditions for, and acting in coordination and concert with Defendant Pierce, to cause harmful or offensive contact with the body of Edgar A. Gearhart.

193.    Conspiring Defendants' conduct, which took place in the course and scope of their employment, and in furtherance of the goal/object of the conspiracy to violate Edgar A. Gearhart's constitutional rights, resulted in foreseeable and intended harmful or offensive contacts with the

body of Edgar A. Gearhart while he was in the custody of the Correctional Officer Defendants, including, but not limited to:

   a.   stabbings of his left shoulder and neck;
   b.   punches, kicks, and other forms of physical beating to his face, hands, arms, legs, torso, and other areas of his body; and
   c.   throwing and/or pouring boiling hot water on his upper torso.

194.    The contact with Edgar A. Gearhart's body was offensive such that it would offend a reasonable person's personal sense of dignity.

195.    The contact with Edgar A. Gearhart's body was so offensive that it would constitute violations of Pennsylvania criminal statutes, including simple assault (pursuant to 18 Pa.C.S.A. §2701) and/or aggravated assault (pursuant to 18 Pa.C.S.A. §2702).

196.    The Conspiring Defendants desired and knew the likely consequences of their conduct in encouraging, inciting, and then failing to respond to Defendant Pierce's acts of intimidation and violence at the prison phones, on the staircase leading to the second tier, on the second tier itself, and/or inside or immediately outside of cell #66, because it was in furtherance of the conspiracy to physically and constitutionally harm Edgar A. Gearhart.

197.    Defendants, CO Martinez, CO Bralczyk, and the Doe Defendants, inclusive, were present and/or within the immediate vicinity of Defendant Pierce's battering of Edgar A. Gearhart, directed the beatings, knew they were bound to occur, and intended the batteries to occur by reason of their actions in furtherance of the conspiracy to physically and constitutionally harm Edgar A. Gearhart, as alleged herein.

198.    Based on the foregoing, CO Martinez, CO Bralczyk, and the Doe Defendants, inclusive, are vicariously or derivatively liable for Defendant Pierce's assault of Edgar A. Gearhart because they were parties to the conspiracy to deprive Edgar A. Gearhart of his constitutional rights; Defendant Pierce's assault of Edgar A. Gearhart fell within the scope of the unlawful object

of the conspiracy; the Correctional Officer Defendants' took overt actions and inactions in furtherance of accomplishing the end-goal of violating Edgar A. Gearhart's constitutional rights; and Correctional Officer Defendants could reasonably foresee the injuries inflicted upon Edgar A. Gearhart by Defendant Pierce (including his death) as a necessary and/or natural consequence therefrom.

199.    The acts of CO Martinez, CO Bralczyk, and the Doe Defendants, inclusive, were performed in concert and coordination with Defendant Pierce by instigating the initial confrontation, directing him to perform these heinous acts of offensively contact Edgar A. Gearhart's body and person on the second tier of the G-Block housing unit, ignoring the obvious warning signs and pleas for help, ratifying Defendant Pierce's violence by joining him in laughter, enabling these shocking acts of violence to continue within or immediately outside the confines of cell #66, and refusing or delaying to provide any medical assistance in furtherance of the conspiracy to inflict catastrophic physical and constitutional injuries upon Edgar A. Gearhart.

200.    Defendants CO Martinez, CO Bralczyk, and the Doe Defendants, inclusive, acted in concert and coordination with Defendant Pierce, as alleged above, and intended to cause harmful and offensive contact with his body of Edgar A. Gearhart in furtherance of the conspiracy to violate his constitutional rights.

201.    Defendants CO Martinez, CO Bralczyk, and the Doe Defendants, inclusive are vicariously liable for the battery inflicted by Defendant Pierce upon Edgar A. Gearhart based on their conspiracy and meeting of minds agreed upon in advance of the beatings, stabbing, and burning of Edgar A. Gearhart.

202.    Any intentional use of force by Defendant Pierce against Edgar A. Gearhart was or should have been reasonably expected by Defendants CO Martinez, CO Bralczyk, and the Doe Defendants, inclusive, and was never consented to by Edgar A. Gearhart.

203.    At all times relevant and material herein, Defendants CO Martinez, CO Bralczyk, and the Doe Defendants, inclusive, were aware that Defendant Pierce was going to attack Edgar A. Gearhart, and despite this knowledge, they recklessly disregarded the safety of Edgar A. Gearhart and refused to intervene and stop the attack from continuing because it was in furtherance of the conspiracy to violate Edgar A. Gearhart's constitutional rights.

204.    The harms, injuries, losses and damages suffered by Edgar A. Gearhart, were directly and proximately caused by the outrageous, willful, wanton, malicious conduct of Defendants, individually, and by and through their agents, servants, and/or employees, which consisted of, among other things, all conduct described more fully herein.

205.    Because of the grossly negligent, wanton, and outrageous conduct of Defendants, as set forth in this Complaint, Plaintiff is entitled to punitive damages.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT XII
## NEGLIGENCE/GROSS NEGLIGENCE/RECKLESSNESS
### Plaintiff, Amy Gearhart v. Defendants, Nurse Hobbs, Maxim Healthcare
### and Medical Providers 1-5 (collectively, "the Medical Defendants")

206.    The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

207.    The Medical Defendants had a duty to comply with generally accepted medical standards of care, and more particularly, to provide medical care consistent with acceptable standards of medical care applicable to inmates at state correctional facilities like SCI Dallas, in their treatment of inmate-patients like Edgar A. Gearhart, including the provision of prescribed medications at scheduled hours of the day.

208.    By reason of their egregious, flagrant, and willful misconduct described herein, the Medical Defendants violated their duties of care to Edgar A. Gearhart in a grossly negligent and reckless disregard of the foreseeable consequences for their want of care, as identified herein.

209.    Defendant Maxim Healthcare is vicariously liable for the negligent, grossly negligent, willful, wanton, and reckless acts and omissions of its employees, agents, nurses, and medical staff, such as Defendants, Nurse Hobbs and Medical Providers 1-5, who breached the applicable standards of care by, *inter alia*:

   a.    Failing to personally interact with or visualize an inmate-patient like Edgar A. Gearhart scheduled to receive prescribed medications during rounds before lockdown before marking him as non-compliant for refusal;
   b.    Accepting one inmate's (Defendant Pierce's) refusal of medication on behalf of another inmate-patient (Edgar A. Gearhart) to whom the medication is prescribed;
   c.    Failing to assess an inmate-patient like Edgar A. Gearhart despite the absence of a response during his scheduled medication time at the time of nighttime rounds;
   d.    Failing to ask for access to and/or observation of an inmate-patient like Edgar A. Gearhart who did not provide a response to his name at the time of his scheduled medication time during nighttime rounds;

52

    e.    Failing to obtain a signed consent form from an inmate-patient like Edgar A. Gearhart before accepting a refusal of medication;

    f.    Failing to educate and obtain informed consent from an inmate-patient like Edgar A. Gearhart regarding the consequences of a refusal or noncompliance with nighttime medications prescribed to him

    g.    Failing to obtain a reason from an inmate-patient like Edgar A. Gearhart for his refusal or noncompliance with nighttime medications;

    h.    Proceeding with and completing medication rounds without completing the above;

    i.    Marking an inmate-patient like Edgar A. Gearhart as non-compliant for refusing his nighttime medications despite the absence of any personal interaction with him and the inaccuracy and/or falsity of that representation in his medical chart.

210.    As the Nurse Hobbs and Medical Providers 1-5 were acting as agents, servants, and/or employees of Defendant Maxim Healthcare, and were acting within the scope and course of their employment, and under the direct control and supervision of Defendant Maxim Healthcare at all times relevant hereto, Defendant Maxim Healthcare is vicariously and derivatively liable to Edgar A. Gearhart on the basis of *respondent superior* liability for their negligent, grossly negligent, willful, wanton, and reckless departures from the standard of care as set forth herein.

211.    Defendant Maxim Healthcare is also directly liable by negligently and recklessly failing to properly qualify, vet, train, educate, orient, retain, supervise, and discipline its employees, agents, nurses, and medical staff contracted to provide services at state correctional facilities like SCI Dallas.

212.    Defendant Maxim Healthcare is also directly liable by negligently, grossly negligently, willfully, wantonly, and recklessly failing to adequately formulate, promulgate, develop, implement, adapt, and enforce policies, procedures, and protocols to ensure quality patient care was provided to inmates at SCI Dallas, including written policies, procedures, and protocol on proper administration and/or dispensation of medications regarding:

    a.    Personal interactions with inmate-patients like Edgar A. Gearhart scheduled to receive prescribed medications during rounds;

      b.      Prerequisites to marking a patient as non-compliant or refusing medications, such as informed consent forms, patient education on the consequences of noncompliance or refusal, and/or confirmation by a third-party provider or correctional officer where applicable;

      c.      Prohibition of accepting one inmate or correctional officer's refusal of medication prescribed to another inmate-patient;

      d.      Assessment, observation, and/or visualization of an inmate-patient like Edgar A. Gearhart in the absence of a response at the time of scheduled medication administration or dispensation during rounds;

      e.      Obtaining and/or scrutinizing a reason for refusal of, or noncompliance with, medications at the time of rounds;

      f.      Prerequisites to completion of medication rounds; and

      g.      Accurate record-keeping and maintenance.

213.    The Medical Defendants' negligent, grossly negligent, willful, wanton, and reckless violations of their duty of care to Edgar A. Gearhart was a direct and proximate cause and a substantial factor in bringing about Edgar A. Gearhart's damages outlined above, and, as a result, the Medical Defendants are liable to Plaintiff.

214.    As a direct and proximate result of the negligent, grossly negligent, willful, wanton, and reckless action and inactions of the Medical Defendants, as identified herein, Edgar A. Gearhart was deprived of necessary medical care and suffered the harms set forth above, including but not limited to internal bleeding, respiratory distress, cardiopulmonary demise and arrest, immense physical pain and suffering, with severe emotional distress such as feelings of helplessness and impending doom, and death.

**WHEREFORE**, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT XIII
## WRONGFUL DEATH
### Plaintiff, Amy Gearhart v. All Defendants

215.    The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length herein.

216.    This action is brought pursuant to the Wrongful Death Act of the Commonwealth of Pennsylvania, at 42 Pa. C.S.A. §8301, *et seq*. ("the Wrongful Death Act").

217.    Edgar A. Gearhart was killed on January 28, 2021.

218.    The personal injuries and death of Edgar A. Gearhart were a direct and proximate result of the negligent and reckless conduct of all Defendants as described above.

219.    Edgar A. Gearhart left surviving him the following person entitled to recover damages for his death, pursuant to the Wrongful Death Act on whose behalf this action is brought: Amy Gearhart (Mother).

220.    By reason of the foregoing injuries and death of Edgar A. Gearhart, Plaintiff Amy Gearhart has suffered and herein makes claims for all permissible damages recoverable pursuant to the Wrongful Death Act, and the decisional precedent interpreting same, including loss of Edgar A. Gearhart's financial support, future earnings, future earning capacity, services, comfort, funeral and burial expenses, and expenses for the administration of the Estate of Edgar A. Gearhart, with the total earnings which would have been earned by Edgar A. Gearhart throughout his working life expectancy had his death not occurred.

221.    By reason of the injuries and death of Edgar A. Gearhart, claim is made for the damages of hospital bills, nursing bills, funeral expenses and expenses in the administration of the estate necessitated by reason of the injuries causing Edgar A. Gearhart's death and any and all damages recoverable under the Wrongful Death Act.

**WHEREFORE**, pursuant to the Wrongful Death Act, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT XIV
## <u>SURVIVAL ACTION</u>
### Plaintiff, Amy Gearhart v. All Defendants

222.    The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length.

223.    Edgar A. Gearhart was killed on January 28, 2021.

224.    The injuries and death of Edgar A. Gearhart were direct and proximate result of the negligent conduct of all named Defendants as aforementioned.

225.    By reason of the foregoing, Plaintiff believes and avers that her late son, Edgar A. Gearhart, sustained great fright, anguish, emotional distress, fear of death, mortification and devastating conscious pain and suffering prior to his death for which this claim is made.

226.    By reasons of the foregoing, the Estate of Edgar A. Gearhart claims all damages sustained by Edgar A. Gearhart, as aforementioned under and pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. §8302 ("the Survival Act"), the applicable Rules of Civil Procedure, and the decisional law interpreting the Act, including loss of earnings, earning power, earning capacity, pain and suffering and emotional distress.

**WHEREFORE**, pursuant to the Survival Act, Plaintiff demands compensatory and punitive damages, as well as other relief indicated below, against Defendants, jointly and/or severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## PRAYER FOR RELIEF

227.    The preceding paragraphs of this Civil Action Complaint are incorporated by reference, as though each were fully set forth at length

228.    In consideration of the foregoing claims, Counts I through XIV, arising out of all Defendants' conduct as alleged herein, Plaintiff Amy Gearhart, Individually and as Administratrix of the Estate of Edgar A. Gearhart, Deceased, requests an award of damages against Defendants, jointly and severally, in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, with respect to each cause of action, including but not limited to:

a.    all available compensatory damages for the described losses;
b.    past and future lost wages and loss of earning capacity;
c.    past and future emotional distress;
d.    consequential and/or special damages;
e.    all available non-economic damages, including without limitation pain, suffering, fear, anguish and loss of enjoyment of life;
f.    punitive damages;
g.    any and all statutory damages available under the Americans with Disability Act, Section 1983, Pennsylvania law, the Wrongful Death Act, and the Survival Act;
h.    reasonable and recoverable attorney's fees;
i.    costs of this action;
j.    delay damages; and
k.    pre-judgment and all other interest recoverable.

Respectfully Submitted,

**VSCP**LAW   VAN NAARDEN · SPIZER
                CHASE · PINTO

*Joshua Van Naarden*
_____

Joshua Van Naarden, Esquire (Pa. ID #86740)
Daniel P. Rosner, Esquire (Pa. ID #327999)
Two Commerce Square
2001 Market Street, Suite 3700
Philadelphia, PA 19103
215.960.0000
*Attorneys for Plaintiff*

Dated:  August 25, 2022

# EXHIBIT A

# SHORT CERTIFICATE
## Letters Of Administration

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF **LUZERNE**                      } ss:

    I, **Joan Hoggarth**, Register of Wills in and for the County of Luzerne, in the

Commonwealth of Pennsylvania, DO HEREBY CERTIFY that on the **22nd** day of

**November**, 2021 **Letters Of Administration** in the Estate of **EDGAR A GEARHART**,

deceased, were granted to **AMY GEARHART**, Administratrix.  Having first been

qualified well and truly to administer the same.  And I further certify that no revocation

of said Letters appears of record in my office.

Date of Death:  **January 28, 2021**

File No.:  **4021-2554**

Social Security No.:  **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**

Given under my hand and seal of office this **22nd** day of **November, 2021.**



**NOT VALID WITHOUT SIGNATURE AND SEAL.**